**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
PATRICIA COSME,                                                   Case No. 21-CV-7430 (RA)

        Plaintiff,

   -against-


GOLDBERG & ASSOCIATES, P.C. and
JULIE GOLDBERG,

        Defendants.
-----------------------------------------------------------X




**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEUDRE 55(b)**




        Akin Law Group PLLC
        Robert D. Salaman
        45 Broadway, Suite 1420
        New York, NY 10006
        (212) 825-1400

        *Counsel for Plaintiff*

**TABLE OF CONTENTS**

PROCEDURAL HISTORY ……………………………………………………………………...1

STANDARD OF REVIEW .............……………………………………………………………..2

FACTUAL BACKGROUND…………………………………………………………………….3

ARGUMENT ……………………………………………………………………………………..5

    I.    PLAINTIFF IS ENTITLED TO UNPAID OVERTIME ……………………………..5

    II.    PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES ……………………….6

    III.    DEFENDANTS FAILED TO PROVIDE A WAGE NOTICE ………………………6

    IV.    PLAINTIFF IS ENTITLED TO STATE PREJUDGMENT INTEREST ……………7

    V.    AUTOMATIC INCREASE OF JUDGMENT …………………………………….7

    VI.    PLAINTIFF SEEKS AN INQUEST ON HER NYCHRL CLAIMS ……………..7

    VII.    PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES ……………………………..9

        A. As the Prevailing Party, Plaintiff Is Entitled to Recover Her Reasonable
           Attorney's Fees and Costs Pursuant to the NYLL and NYCHRL ………………..9

        B. The Lodestar Method is the Presumptive Starting Point in Fee Awards Analysis
           in the Second Circuit ……………………………………………………………...9

        C. The Hourly Rate of Plaintiff's Counsel is Reasonable and Within Second Circuit
           Standards ………………………………………………………………………...10

        D. The Hours Expended by Plaintiff's Counsel Litigating the Matter Is Reasonable
           and Within Second Circuit Standards ……………………………………………...11

        E. Plaintiff's Counsel is Entitled to Reimbursement of Litigation Costs
           and Expenses ……………………………………………………………………12

CONCLUSION ……………………………………………………………………..............12

# TABLE OF AUTHORITIES

**Cases**

*155 Henry Owners Corp. v. Lovlyn Realty Co.,* 647 N.Y.S.2d 30, 32,
   231 A.D.2d 559, 561 (N.Y. App. Div. 1996) …………………………………………7

*Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1991) ………………………….2

*Ainbinder v. Money Ctr. Fin. Group, Inc.,* No. 10 CV 5270,
   2013 U.S. Dist. LEXIS 47103, at *11 (EDNY 2013) ………………………………………2

*Albunio v. City of New York,* 16 N.Y.3d at 479 (Ct of Appeals 2011) ……………………………..8

*Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509, 512 (S.D.N.Y. 2011) ……………………..9

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946) …………………………………………3

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
   484 F.3d 162 (2d Cir. 2007) ……………………………………………………………….9, 10

*Blum v. Stenson*, 465 U.S. 886, 895-896 (1974) ……………………………………………………..10

*Cadlerock Joint Venture, L.P. v. Prado*, 2008 WL 4561611, at *2 (E.D.N.Y. 2008) ……………3

*Carter v. Frito-Lay, Inc.*, 425 N.Y.S.2d 115, 115 (N.Y. App. Div. 1980) ………………………6

*Chichinadze v. BG Bar Inc.*, 517 F.Supp.3d 240 (S.D.N.Y. 2021) ……………………………….6

*Circuito Cerrado, Inc. v. Pizzeria v. Pupiseria Santa Rosito, Inc.*,
   804 F.Supp.2d 108, 112 (EDNY 2011) ………………………………………………………..2

*Credit Lyonnais Sec. (USA) Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999) ……………….2

*de la Cruz v. N.Y.C. Human Resources Administration, Dept. of Social Services*,
   82 F.3d 16, 20 (2d Cir. 1996) ……………………………………………………………….8

*Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) …….2

*Gurung v. Malhotra*, 851 F.Supp.2d 583, 597 (S.D.N.Y. 2012) ………………………………..11

*Gutman v. Klein*, No. 03 CV 1570, 2010 U.S. Dist. LEXIS 124704,
   at *4-5, 2010 WL 4975593, at *1 (EDNY 2010) ……………………………………………..2

*Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) ……………………………………………..9

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ……………………………………………………9

*In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 (S.D.N.Y. 2003) ……12

*Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*,
    No. 06 CV 1878, 2007 U.S. Dist. LEXIS 99935, at *4 (EDNY 2007) …………………..2

*Kahlil v. Original Old Homestead Rest., Inc.,* 657 F.Supp, 2d 470, 475 (S.D.N.Y. 2009) ……..10

*Marfia v. T.C. Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998) ………………………………………….7

*Martinez v. Hilton Hotels Corp.*, 930 F.Supp.2d 508, 519 (S.D.N.Y. 2013) ……………………5

*Reich v. S. New Eng. Telecomm. Corp.,* 121 F.3d 58 (2d Cir. 1997) …………………………….3

*Reilly v. NatWest Mktrs. Grp., Inc.,* 181 F.3d 253, 265 (2d Cir. 1999) ……………………….6, 7

*Rodriguez v. Queens Convenience Deli Corp.,* No. 09 CV 1089,
    2011 U.S. Dist. LEXIS 120478, at * 10 (E.D.N.Y. 2011) ……………………………….6

*Said v. SBS Electronics, Inc.*, No. CV-08-4067 (E.D.N.Y. 2010) ………………………………11

*Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967) ……….3

*Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993) ………………………………….2

*Tiacoapa v. Carregal*, 386 F.Supp.2d 362, 369 (S.D.N.Y. 2005) ………………………………..9

**Statutes**

New York City Human Rights Law ("NYCHRL") ……………………………..1, 3, 7, 8, 9, 12

New York Labor Law ("NYLL") …………………………………………………1, 5, 6, 7, 9, 10

**Rules**

Federal Rule of Civil Procedure 55(b)(2) ………………………………………………………...1

N.Y. Comp. Codes R & Regs. Tit. 12, § 142-2.2 ………………………………………………..5

NY CPLR 5004 …………………………………………………………………………………..7

Plaintiff Patricia Cosme ("Cosme" or "Plaintiff") respectfully requests that the Court enter Default Judgment against Defendants Goldberg & Associates, P.C. ("G&A" or the "Firm" and Julie Goldberg ("Goldberg") (collectively, "Defendants") pursuant to Federal Rule of Civil Procedure 55(b)(2) ("Rule 55(b)(2)").

## PROCEDURAL HISTORY

On August 6, 2021, Plaintiff filed an Amended Complaint ("the Action") against Defendants G&A and Goldberg in Bronx Supreme Court (Index No. 33091/2019E), alleging race discrimination, a hostile work environment and retaliation in violation of the New York City Human Rights Law ("NYCHRL") and unpaid overtime and the failure to provide a wage notice in violation of the New York Labor Law ("NYLL").  On September 3, 2021, the Action was removed to Federal Court.  ECF Doc. No. 1.  On October 28, 2021, an Initial Conference was held and the Court issued a Scheduling Order.  ECF Doc. No. 10.  Discovery was conducted, including Goldberg's deposition which was held on May 12, 2022.

On October 21, 2022, a Status Conference was held and the parties agreed to a December 6, 2022 trial date.  ECF Doc. No. 27.  The trial date was later adjourned to February 7, 2023.  ECF Doc. No. 32.  On December 6, 2022, Defendants' counsel filed an Order to Show Cause to withdraw as attorneys.  ECF Doc. No. 33, 34.  On December 19, 2022, G&A wrote a letter to the Court stating that Goldberg's primary doctor placed her on a medical leave for 60 days until January 29, 2023.  On February 1, 2023, G&A wrote another letter to the Court stating that Goldberg's medical leave was extended.

On February 7, 2023, the Court granted Defendants' counsel's motion to withdraw. Further, the Court stated that "should Plaintiff wish to move for a default judgment, she may file

1

such motion by March 1, 2023.  ECF Doc. No. 40.  Upon her request, the Court gave Plaintiff until March 10, 2023 to file the default motion.  ECF Doc No. 42.

## STANDARD OF REVIEW

The Defendants' default is deemed an admission of liability and all well-pleaded factual allegations in the amended complaint pertaining to liability are deemed true.  *Ainbinder v. Money Ctr. Fin. Group, Inc.,* No. 10 CV 5270, 2013 U.S. Dist. LEXIS 47103, at *11 (EDNY 2013); *Circuito Cerrado, Inc. v. Pizzeria v. Pupiseria Santa Rosito, Inc.*, 804 F.Supp.2d 108, 112 (EDNY 2011); *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.,* No. 06 CV 1878, 2007 U.S. Dist. LEXIS 99935, at *4 (EDNY 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).  "Once a party's default is established, damages must still be proven."  *Ainbinder*, 2013 U.S. Dist. LEXIS 47103, at *12 (citing *Gutman v. Klein*, No. 03 CV 1570, 2010 U.S. Dist. LEXIS 124704, at *4-5, 2010 WL 4975593, at *1 (EDNY 2010)).  The burden is on the plaintiff to provide adequate support for the relief sought.  *See Greyhound Exhibitgroup*, 973 F.2d at 158; *Ainbinder*, 2013 U.S. Dist. LEXIS 47103, at *12.

An evidentiary hearing is not necessary before entry of default judgment if the Court has decided the law applicable to the calculation of damages, *see Credit Lyonnais Sec. (USA) Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir. 1999), and the plaintiff has submitted evidence establishing with reasonable certainty the factual basis for an award of damages.  *See Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993); *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1991).

The Plaintiff includes an affidavit herewith evidencing the amount of wages the Defendants owe her.  The Plaintiff's affidavit is the best evidence of her hours worked as the Defendants have failed to participate in this case.  Such approximations of hours worked by an

employee are acceptable when there are no time records available.  *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946); *Reich v. S. New Eng. Telecomm. Corp.,* 121 F.3d 58 (2d Cir. 1997).  Separately, Plaintiff respectfully requests as Inquest to determine her damages for emotional distress, lost wages and punitive damages on the NYCHRL discrimination claim.

Here, the Defendants have failed to defend this action.  Since the Order to Show Cause by the Court was granted, the Defendants have had every opportunity but failed to retain counsel.  The Corporate Defendant G&A cannot represent itself pro se in federal court, as domestic corporations must be represented by licensed counsel.  See *Shapiro, Bernstein & Co. v. Continental Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967).  The individual Defendant Goldberg has failed to defend this action, as she not communicated with the Court since the Order to Show Cause was granted.  Further, the trial in this matter (originally scheduled for December 2022) has been delayed due to the actions of the Defendants.  Entry of a default judgment is "appropriate when the adversary process has been halted because of an essentially unresponsive party."  *Cadlerock Joint Venture, L.P. v. Prado*, 2008 WL 4561611, at *2 (E.D.N.Y. 2008).  As such, Default Judgment should be entered against both Defendants.

## FACTUAL BACKGROUND

On or about August 27, 2018, Cosme, a Mexican American, commenced employment with G&A (Aff. ¶2-3).[1]  Cosme was employed as an immigration paralegal for G&A at 5586 Broadway, 3rd Floor, Bronx NY 10463 (Aff. ¶4).

Cosme was employed by G&A as a non-exempt employee (Aff. ¶5).  Upon Cosme's hire, the Defendants did not provide Cosme with a wage notice (Aff. ¶6).  Cosme was paid in accordance with an annual salary of $48,205.00.  The Defendants also provided additional bonus

---

[1] (Aff. ¶ _) refers to the Paragraph in Plaintiff's Affidavit, attached as Exhibit A to these moving papers.

compensation of $15.00 per day ($3,795.00 per year) to Cosme for completing a daily audit (Aff. ¶7).  Cosme would work between 50 and 60 hours per week for G&A (Aff. ¶8).  Despite working in excess of 40 hours per week, the Defendants failed to pay Cosme overtime (Aff. ¶9).

In addition to the wage violations, Cosme was also discriminated against, forced to endure a hostile work environment and retaliated against (Aff. ¶10).  Throughout Cosme's employment, Ana Rosa Munoz ("Ana") – a Dominican paralegal at G&A made unwelcome racial comments to Cosme (Aff. ¶11).  Ana told Cosme: (1) Don't speak Mexican to me; (2) Can't you see she's Mexican (said multiple times); (3) I don't understand how "your people" can come from Central America illegally and can't make a trip from Florida to New York; and (4) "Orale wey" (Aff. ¶12).  Cosme found Ana's discriminatory remarks highly offensive for the workplace (Aff. ¶13).

In November 2018, Cosme had a one-on-one meeting with Goldberg where she mustered the courage to complain about the racial comments by Ana.  In response, Goldberg told Cosme that the comments could be grounds for termination for Ana; nonetheless, she needed to time to think about it and would have a further discussion with Cosme upon her return after Thanksgiving.  Despite Cosme's complaint, following Thanksgiving, Ana continued with the discriminatory comments, including "orale wey" (Aff. ¶14).

Approximately two weeks after Thanksgiving, with no follow-up having occurred, Cosme asked Goldberg about the status of the situation.  Goldberg told Cosme she would send her breathing exercises so that she could hone her own anger (Aff. ¶15).  Unable to endure the race discrimination and hostile work and environment any further, Cosme was constructively terminated on January 4, 2019 (Aff. ¶16).  Cosme informed the Firm of her constructive terminating by writing, in-part as follows: "It goes without saying that statements such as "Don't

4

talk Mexican to me" and "Orale wey" to name a few, are not only racist by undermine my role as a paralegal. An environment where colleagues are unable to look beyond my ethnicity not only is unhealthy, but realization that little or no measures were taken to address the issue seemed to be indicative of my concerns" (Aff. ¶17). As a result of the Defendants' actions, Cosme sustained lost wages and severe emotional distress (Aff. ¶18).

## ARGUMENT

I. **PLAINTIFF IS ENTITLED TO UNPAID OVERTIME**

An employer subject to the NYLL, like G&A, is required to pay its employees overtime at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek. N.Y. Comp. Codes R & Regs. Tit. 12, § 142-2.2; *see Martinez v. Hilton Hotels Corp.*, 930 F.Supp.2d 508, 519 (S.D.N.Y. 2013).

Plaintiff alleges that she worked between 50 and 60 hours per week (approximately 55) and was paid in accordance with an annual salary of $48,205.00, or $23.17 per hour ($48,205/52 weeks/40 hours). Plaintiff's overtime rate should have been $34.76 per hour ($23.17 X 1.5). Based on the Plaintiff's evidence of her hours and wages (which is undisputed), the Defendants owe the Plaintiff $9,385.20 in unpaid overtime ($34.76 X 15 OT hours X 18 weeks).

| **Overtime Premium** | | | | | |
|---|---|---|---|---|---|
| Weeks | Hours worked per week | Overtime hours per week | Overtime rate | Overtime owed per week | Total overtime owed |
| 18 | 55 | 15 | $34.76 | $521.40 | $9,385.20 |
| **Total overtime owed = $9,385.20** | | | | | |

## II.     <u>PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES</u>

The Plaintiff is also entitled to liquidated damages under the NYLL. Liquidated damages under the NYLL are punitive. *See, e.g., Reilly v. NatWest Mktrs. Grp., Inc.,* 181 F.3d 253, 265 (2d Cir. 1999); *Carter v. Frito-Lay, Inc.*, 425 N.Y.S.2d 115, 115 (N.Y. App. Div. 1980).

An employer who seeks to avoid liquidated damages as a result of violating the NYLL must prove "a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 663(1). In this case, the Defendants, by their default, fail to meet their burden to oppose the imposition of liquidated damages. *See Rodriguez v. Queens Convenience Deli Corp.,* No. 09 CV 1089, 2011 U.S. Dist. LEXIS 120478, at * 10 (E.D.N.Y. 2011).

The plaintiff is entitled to liquidated damages in the amount of 100% under the NYLL § 663(1). Therefore, the plaintiff is entitled to liquidated damages in the amount of <u>$9,385.20</u>.

## III.     <u>DEFENDANTS FAILED TO PROVIDE A WAGE NOTICE</u>

The Defendants also failed to furnish to the Plaintiff, at the time of hire, a notice containing the rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law, in violation of NYLL § 195(1) and N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-2.2.

Due to Defendants' violation of NYLL § 195(1) and N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-2.2, the Plaintiff is entitled to recover from the Defendants statutory damages in the amount of <u>$5,000.00</u>. See *Chichinadze v. BG Bar Inc.*, 517 F.Supp.3d 240 (S.D.N.Y. 2021).

### IV. PLAINTIFF IS ENTITLED TO STATE PREJUDGMENT INTEREST

Under the NYLL, prejudgment interest may be awarded in addition to liquidated damages. *Reilly*, 181 F.3d 265. The interest rate is nine percent per annum. NY CPLR 5004. "New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date,' which can be used to simplify the calculation." *Marfia v. T.C. Bankasi*, 147 F.3d 83, 91 (2d Cir. 1998) (quoting *155 Henry Owners Corp. v. Lovlyn Realty Co.,* 647 N.Y.S.2d 30, 32, 231 A.D.2d 559, 561 (N.Y. App. Div. 1996)). In this case, the prejudgment interest owed as of the date when the damages were occurred (January 2019) is $8,557.34 (interest is $2,139.34 per year).

### V. AUTOMATIC INCREASE OF JUDGMENT

The NYLL also provides that "any judgment or court order awarding remedies under this section [sections 198 and 663, as does the judgment applied for herein] shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent." NYLL §§ 198(4), 663(4). It further provides that costs and attorneys' fees incurred in enforcement of a judgment shall be awarded to the plaintiffs. *Id.*

### VI. PLAINTIFF SEEKS AN INQUEST ON HER NYCHRL CLAIMS

In addition to the NYLL wage claims, Plaintiff also has separate claims for race discrimination, a hostile work environment and retaliation under the NYCHRL. In order for Plaintiff to establish a prima facie case of discrimination, Plaintiff merely must show that she is a member of a protected class; she was qualified for the position he held; she suffered an adverse

7

employment action; and the adverse employment action took place under circumstances giving rise to an inference of discrimination. The "level of proof a plaintiff is required to present in order to establish a prima facie case of discrimination is low." *de la Cruz v. N.Y.C. Human Resources Administration, Dept. of Social Services*, 82 F.3d 16, 20 (2d Cir. 1996). In this case, Cosme, a Mexican American, was qualified for her position (since she was hired) and was forced to quit her position (constructive termination) after numerous discriminatory comments by her co-worker, Ana. The comments continued even after Cosme complained to her supervisor, Goldberg. Plaintiff clearly has established a prima facie case of race discrimination (which has not been rebutted).

Meanwhile, to prevail on a retaliation claim under the NYCHRL, the Plaintiff need only show that she took an action opposing his employer's discrimination (see *Albunio v. City of New York,* 16 N.Y.3d at 479 (Ct of Appeals 2011)) and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action. Goldberg failed to take any remedial action following Cosme's complaint and told her to engage in breathing exercises to hone her own anger. As such, Plaintiff was deterred from complaining again in the future, and was left with no alternative but to resign her employment.

As a result of the race discrimination, a hostile work environment and retaliation, Cosme sustained lost wages and severe emotional distress. Plaintiff respectfully requests that the Court schedule an Inquest to determine the precise amount of Cosme's damages on her NYCHRL claims.

## VII.     PLAINTIFF IS ENTITLED TO ATTORNEY'S FEES

### A.     As the Prevailing Party, Plaintiff Is Entitled to Recover Her Reasonable Attorney's Fees and Costs Pursuant to the NYLL and NYCHRL

Plaintiff's counsel is entitled to their reasonable attorney's fees to compensate for their work in recovering unpaid wages and discrimination damages on behalf of Plaintiff. The request for $31,880.00, pursuant to the lodestar method of fee calculation, plus expenses, is reasonable and well within the range approved by courts in similar cases. Under *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 484 F.3d 162 (2d Cir. 2007), the Court held that there is no proportionality requirement so long as "a party has established his entitlement to some relief on the merits of his claims." Here, through the proposed default judgment, Plaintiff's counsel achieved success on behalf of his client for their claims. Plaintiff's counsel's fees should be approved so long as the hours expended are reasonable.

### B.     The Lodestar Method is the Presumptive Starting Point in Fee Award Analysis in the Second Circuit

The traditional practice of the Second Circuit in determining fee awards is to multiply the reasonable hours expended by the reasonable hourly rate, also known as the lodestar method. "The lodestar represents the presumptively reasonably fee award, but the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case." *Tiacoapa v. Carregal*, 386 F.Supp.2d 362, 369 (S.D.N.Y. 2005). Within the Second Circuit, the lodestar method is favored for its promotion of public policy concerns and its ease of application. See *Allende v. Unitech Design, Inc.*, 783 F.Supp.2d 509, 512 (S.D.N.Y. 2011) (citing *Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007) and *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

As noted by the Court in *Allende,* utilizing the lodestar method to award attorney's fees effectuates the greater public policy consideration of providing a plaintiff with quality

9

representation, because counsel is placed in the same condition as he would have been in the regular course of business, representing any other plaintiff who pays out of pocket. *Id.* This consideration is of great importance because the typical wage-and-hour or discrimination plaintiff is represented on a contingency fee or pro bono basis, and there is no guarantee that counsel will be paid for his or her work, despite diligent efforts.

Failure to award Plaintiff's counsel fees and costs in their entirety would deter qualified counsel from accepting single plaintiff claims, where the award would generally be similar to that received by Plaintiff here. As such, an award of attorney's fees utilizing the lodestar method of calculation would be the only reasonable means of achieving the objective of the NYLL attorney's fees award provision.

**C.     The Hourly Rate of Plaintiff's Counsel is Reasonable and Within Second Circuit Standards**

Courts in this Circuit have consistently held that the hourly rates used in determining a fee award should be "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Neighborhood Ass'n v. City of Albany*, at 184. This rate should be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-896 (1974); *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006). In determining reasonable hourly rates, a court should first examine the attorney's experience. *Kahlil v. Original Old Homestead Rest., Inc.*, 657 F. Supp, 2d 470, 475 (S.D.N.Y. 2009).

Robert D. Salaman is a Partner at Akin Law Group PLLC. He is an attorney in good standing with the New York State and New Jersey States Bars (admitted in 2013). Mr. Salaman became a full-time associate attorney upon admission to the bars in 2013, and was promoted to Partner in 2020. He has worked extensively in the field of employment litigation (including

wage and hour), in both state and federal courts, on both the plaintiff and management side. Mr. Salaman's accolades were recognized by Super Lawyers / New York Metro, which named him a Rising Star every year from 2015 to 2022. His rate is $400.00 per hour, which is in line with the prevailing market rates today for an attorney of similar experience practicing within the Southern District of New York. *Gurung v. Malhotra*, 851 F.Supp.2d 583, 597 (S.D.N.Y. 2012) ("attorneys in FLSA cases typically command hourly rates… between $250 and $450 per hour, depending on their level of experience."

**D.     The Hours Expended by Plaintiff's Counsel Litigating the Matter Is Reasonable and Within Second Circuit Standards**

Plaintiff's counsel has expended a total of 79.7 hours on this case to date. Plaintiff's counsel spent significant time and effort to file the lawsuit, conduct discovery and file this pending default motion. From the outset, Plaintiff's counsel thoroughly investigated Plaintiff's claims, focusing on the underlying merits of Plaintiff's claims and the damages to which she was entitled. Further, Plaintiff's counsel conducted discovery, including Goldberg's deposition, and prepared the file for trial.

"A fee applicant bears the burden of demonstrating the hours expended and nature of the work performed, preferably through contemporaneous time records that describe with specificity the nature of the work done, the hours expended, and the dates." *Said v. SBS Electronics, Inc.*, No. CV-08-4067 (E.D.N.Y. 2010). The time spent by Plaintiff's counsel is described in full in the Declaration of Robert D. Salaman, and evidenced by Plaintiff's counsel's contemporaneous time records attached thereto. See Ex. C.

The hours expended by Plaintiff's counsel represent hours of work necessary to properly represent Plaintiff throughout this litigation. The hours expended on behalf of Plaintiff in this

matter were not duplicative nor excessive.  Counsel's drafting of documents and discussion with the client and Court were all handled as efficiently as possible.

Given the objective that statutory attorney's fees compensate counsel sufficiently enough to promote qualified attorneys to represent meritorious wage and hour and discrimination claims, and the consideration that Plaintiff's counsel has demonstrated that the hours expended are not excessive or duplicative, Plaintiff's counsel has demonstrated that they are entitled to their legal fees in their entirety.  Overall, Plaintiff's attorneys' fees are $31,880.00 to date.

**E.**     **Plaintiff's Counsel is Entitled to Reimbursement of Litigation Costs and Expenses**

Lastly, Plaintiff's counsel requests reimbursement of $809.50 in costs incurred in prosecuting this action to date (costs attached as Exhibit D).  "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 (S.D.N.Y. 2003).  Here, Plaintiff's counsel's expenses were incidental and necessary to the representation of Plaintiff.  These expenses include filing, service fees, motion fees and court reporter costs.

## CONCLUSION

**WHEREFORE**, Plaintiff seeks a default judgment against the Defendants jointly and severally in the amount of $23,770.40 plus further prejudgment interest of $8,557.34 to date.  Additionally, Plaintiff seeks attorneys' fees and costs in the amount of $32,689.50.  Separately, Plaintiff seeks an Inquest as to her damages on the NYCHRL claims, together with such other relief as the Court deems just and proper.

Dated: March 10, 2023
      New York, New York

                                           Respectfully submitted,

                                           **Akin Law Group PLLC**

                                           */s / Robert D. Salaman*
                                           _____

                                           Robert D. Salaman